1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   SARAH BRUNO REYES, | Case No.:  25-CV-2959 JLS (JLB) |
| 12                              Petitioner, | **ORDER GRANTING IN PART** |
| 13   v. | **WRIT OF HABEAS CORPUS** |
| 14   CHRISTOPHER LAROSE, Senior | (ECF No. 1) |
| 15   Warden, Otay Mesa Detention Center, et al., | |
| 16                              Respondents. | |

17

18        Presently before the Court is Petitioner Sarah Bruno Reyes's Petition for Writ of

19   Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1).  Also before the Court

20   is Respondents Christopher LaRose's (Senior Warden of Otay Mesa Detention Center),

21   Gregory Archambeault (San Diego Field Office Director, U.S. Immigration and Customs

22   Enforcement), Todd Lyons's (Acting Director of Immigration Customs Enforcement),

23   Kristi Noem's (Secretary of the U.S. Department of Homeland Security), and Pamela

24   Bondi's (Attorney General of the United States) (collectively, "Respondents") Return to

25   the Habeas Petition ("Ret.," ECF No. 4), and Petitioner's Traverse ("Traverse," ECF No.

26   6).  *See generally* Docket.  For the reasons set forth below, the Court **GRANTS** in part

27   Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

28   / / /

## BACKGROUND

Petitioner, a Mexican national, has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement division at the Otay Mesa Detention Facility, since March 11, 2025. Pet. ¶¶ 10, 26. Petitioner, a transgender woman, suffered persecution in Mexico on account of her transgender identity and, thus, entered the United States multiple times without inspection in the early 2000s. *Id.* ¶ 17. Petitioner has lived continuously in the United States since 2007. *Id.* On February 22, 2012, and other unspecified times, Petitioner was arrested and convicted of "multiple low-level, non-violent offenses." *Id.* ¶ 18. After a series of immigration judge decisions and appeals, Petitioner's application for protection from removal under 8 U.S.C. §1231(b)(3) was granted; the immigration judge recognizing that "she faced persecution in Mexico on account of her membership in a particular social group—transgender women." *Id.* ¶ 21. On February 20, 2013, Petitioner was released from immigration custody under an Order of Supervision ("OSUP"), and for more than twelve years, has complied with all supervisory conditions. *Id.* ¶¶ 22–23. Petitioner married her U.S. citizen spouse in 2020, lawfully changed her name and gender marker, and is actively working towards an immigrant visa. *Id.* ¶¶ 24–25.

On March 11, 2025, while attending her routine annual Immigration and Customs Enforcement ("ICE") check-in, Petitioner "was unexpectedly arrested and detained by ICE officers," being informed only that "the laws have changed and that she would be taken into custody notwithstanding her grant of protection from removal to Mexico." *Id.* ¶ 26. Since Petitioner's detention, according to Respondents, "ICE has been seeking to identify a third country where Petitioner may be removed." Ret. at 2. On March 14, 2025, "ICE submitted a Form I-214, Request for Acceptance of Alien, to Guatemala, El Salvador, and Ecuador." *Id.* at 4. All these countries have since denied ICE's requests. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of

his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien is denied asylum, granted withholding of removal under 8 U.S.C. § 1231(b)(3), and ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal to a third country.  *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal period."  § 1231(a)(1)(A).  After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention."  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention."  *Id.* at 701.  After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing.  *Id.*  "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an OSUP.  *Id.* at 700.

Once ICE releases a non-citizen on OSUP, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after [her] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [she] believes shows there is no significant likelihood [she may] be removed in the reasonably foreseeable future, or that [she] has not violated the order of supervision." *Id.*

Here, Petitioner was granted protection from removal under 8 U.S.C. § 1231(b)(3), meaning Petitioner cannot be removed to her home country of Mexico. Pet. ¶ 21. Petitioner was released on OSUP in 2013, presumably, because her removal was not foreseeable at that time. Pet ¶ 73; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE agents at her annual ICE check-in. Pet. ¶ 26. Petitioner was not provided any notice of the reasons for her revocation beyond the agent stating, "the laws have changed." *Id.*; *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). Respondents do not argue that Petitioner was provided with notice; instead, they simply state that, "ICE re-detained Petitioner for purposes of executing her removal to a third country." Ret. at 2. Further, while ICE agents did conduct an interview immediately after detaining Petitioner, this interview could not have provided Petitioner with "an opportunity to respond to the reasons of revocation stated in the notification," 8 C.F.R. § 241.13(i)(3),

because there was no notification. Pet. Ex. 9.; *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation.").

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a likelihood of success where petitioner was not provided an informal interview). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of her OSUP without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have showed a change in circumstances such that there is now a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. First, Petitioner cannot be removed to Mexico. Pet. ¶ 74. Second, Respondents have failed to secure travel documents for Petitioner. The first time Petitioner was detained, she was released because her removal was not reasonably foreseeable, *id.* ¶ 73, and Respondents present no evidence that this has changed. Not only did Respondents re-detain Petitioner without any travel documents, or alleged potential for travel documents, but Respondents' requests for a Form I-214 removal to Guatemala, El Salvador, and Ecuador were all denied. Ret. at 4. Third, in the last eight months since Petitioner has been in custody, Respondents

have not provided evidence of any outstanding requests to other countries or developments in Petitioner's case besides the empty statement by the declaring officer that "there is a significant likelihood of removal to a third country." *Id.* at 2; *Hoac*, 2025 WL 1993771, at *4 (rejecting the government's argument that ICE's intent to apply for travel documents constituted changed circumstances because they failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around").

Therefore, because Respondents have failed to follow their own regulations in re-detaining Petitioner and have failed to demonstrate that her removal is reasonably foreseeable, the Court **GRANTS** the Petition.

### A. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 35. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

/ / /

/ / /

/ / /

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting OSUP.  The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations.  The Parties are **ORDERED** to file a Joint Status Report by <u>November 20, 2025</u>, confirming that Petitioner has been released. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within <u>thirty (30) days</u> of this Order, and Respondents are instructed to file any opposition within <u>fourteen (14) days</u> of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

Dated:  November 17, 2025

Hon. Janis L. Sammartino
United States District Judge

25-CV-2959 JLS (JLB)